O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC E.,<br><br>     Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>     Defendant. | Case No. 5:25-cv-01601-KES<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

## I.
## INTRODUCTION

On June 26, 2025, Plaintiff Marc E. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 1.) On September 22, 2025, Plaintiff filed a Plaintiff's Brief under Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). ("PB" at Dkt. 9.) Three days later, on September 25, 2025, Defendant filed a responding Commissioner's Brief under Rule 7. ("CB" at Dkt. 10.) Plaintiff submitted a Notice of Submission on the Opening Brief on October 6, 2025. (Dkt. 11.) For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

1

## II.

## BACKGROUND

After obtaining a college degree, Plaintiff worked in law enforcement as an investigative technician for sixteen years. Administrative Record ("AR") 38, 212-13. After being hospitalized for left arm pain and his heart condition, he worked as a real estate agent from 2005 to 2014 earning about $9,000 per year. AR 22, 213, 2093-94. In April 2019, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. AR 192-93. His alleged disability onset date was October 10, 2018, the day after the Social Security Administration ("SSA") denied his prior DIB application. AR 192, 221. He claimed disability due to type 1 diabetes and "[c]hronic [h]eart [f]ailure." AR 211. He contends that his exercise intolerance, which requires unscheduled, lengthy rest breaks, precludes all work. AR 2103-04.

In May 2022, Administrative Law Judge ("ALJ") Paula Martin conducted a telephonic hearing at which Plaintiff, represented by counsel, appeared, along with a vocational expert ("VE"). AR 31-62. After ALJ Martin issued an unfavorable decision (AR 12-30), Plaintiff sought district court review. See Eschrich v. O'Malley, 5:23-cv-01422-KES ("Eschrich I"). After the Court requested supplemental briefing to answer questions about the ALJ's summary of the medical records and reasons for discounting Plaintiff's symptom testimony, the Parties stipulated to remand the case. (Id., Dkt. 17, 18.)

On remand, ALJ Elizabeth Watson conducted a new hearing on March 21, 2025. AR 2076-105. Both a medical expert ("ME") and VE testified. AR 2080, 2097. ALJ Watson published an unfavorable decision on April 21, 2025. AR 1503-24. The ALJ found that Plaintiff last met the insured status requirements for DIB on December 31, 2021. AR 1509. The ALJ found that between October 2018 and December 2021, Plaintiff suffered from the severe, medically determinable impairments ("MDIs") of congestive heart failure, coronary artery disease, cardiomyopathy, and

2

type 1 diabetes. AR 1509. Despite these MDIs, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations on postural activities and environmental conditions. AR 1510-11.

Based on these RFC findings, the ME and VE's testimony, and other evidence, the ALJ found that Plaintiff could work as a security guard, counter clerk, and general office clerk. AR 1515-16. The ALJ concluded that Plaintiff was not disabled "from October 10, 2018, the alleged onset date, through December 31, 2021, the date last insured." AR 1516.

## III.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ gave clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. (PB at 8-13.)

## IV.
## DISCUSSION

### A. Relevant Law.

The ALJ engages in a two-step analysis to evaluate a claimant's subjective symptom testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only by making specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010);

3

Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).  Unless it is found that a claimant is malingering or has failed to provide objective medical evidence in support of their testimony, an ALJ must provide clear and convincing reasons for rejecting a claimant's subjective testimony about the severity of experienced symptoms.  Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  While an ALJ's findings must be properly supported and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is not "required to believe every allegation" of disability.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Lavon S. v. Kijakazi, No. 5:23-cv-00981-KES, 2023 U.S. Dist. LEXIS 214518, at *5-6 (C.D. Cal. Nov. 29, 2023).

**B. Summary of Plaintiff's Symptom Testimony.**

At the first hearing, in May 2022, Plaintiff testified that he was unable to work because of heart failure.  AR 40.  He had "constant chest pain."  AR 53.  Because of his heart's weakened pumping, fluid would build up in his legs.  AR 40-41.  This caused "[e]xtreme pain" with "leg pain constantly" and "muscle aches."  AR 42.  He rated his average daily pain at between level 7 and level 10.  AR 42.

Because of weak heart function, he became "severely exhausted" after doing even a "small task" and would still be exhausted the next day.  AR 40.  He could only walk fifteen or twenty steps while carrying a 12-pack of soda before getting out of breath.  AR 49.  When he got out of breath, it felt as though someone was "standing on [his] chest for [ten to fifteen] minutes."  AR 54.  He then had to "sit down and do nothing" for ten to fifteen minutes "to get enough oxygen."  AR 54.  He took two or three naps per day, some lasting as long as three or four hours.  AR 45-46.  When not lying down, he needed to sit with his feet elevated to address pain and swelling.  AR 47-49.

His diabetes was a congenital condition that he considered "controlled."  AR 44.  When he exerted the "extra energy" required to do tasks because of his weak heart, however, it caused his "blood sugars to plummet" and he ended up passing

out three or four times per month. AR 44. He once passed out while vacuuming and "the vacuum ran over [his] hand nearly severing it." AR 51-52, 227.

At the second hearing, in March 2025, Plaintiff testified that he was "always extremely fatigued." AR 2096. He would get out of breath and feel like someone was standing on his chest just from walking up ten stairs. AR 2096. He had constant, severe chest pain and felt like he was having a heart attack "every minute and every second of every day." AR 2096.

## C. Relevant Administrative Proceedings.

ALJ Watson summarized the treating records for Plaintiff's heart condition. AR 1509-10. The ALJ also summarized the medical opinion evidence including: (1) State agency medical consultants who found in July and October 2019 that Plaintiff could stand or walk for about six hours in an eight-hour workday (AR 1511, citing AR 70, 83); and (2) the ME who testified that Plaintiff should be restricted from lifting more than 20 pounds but not against walking (AR 1512, citing AR 2088). Finally, the ALJ summarized Plaintiff's testimony. AR 1513.

The ALJ found that Plaintiff's "subjective allegations" about the "alleged severity" of his symptoms and the resulting functional limitations were "not supported by the record as a whole." AR 1513. As reasons, the ALJ cited: (1) inconsistency with the medical evidence, (2) inconsistency between Plaintiff's testimony about difficulty walking and other evidence; and (3) inconsistency with the effectiveness of treatment. AR 1513-14.

## D. Analysis of Claimed Error.

    a.   Reason One: Inconsistency with the Medical Evidence.

The ALJ found that Plaintiff's "statements about the alleged intensity, persistence, and limiting effects of [his] symptoms are inconsistent with the objective medical evidence." AR 1513. The ALJ then summarized records from physical examinations and cardiac function testing showing that Plaintiff's heart function was only mildly impaired. AR 1513-14.

    Plaintiff argues that the ME, Beverly Yamour, M.D., FACC (Fellow of the American College of Cardiology), found that Plaintiff's extreme fatigue was "within the range of medically reasonable given the history and course of treatment." (PB at 12; see also AR 1512 (ME's qualifications).) According to Plaintiff, Dr. Yamour's testimony undermines any evidentiary support for the ALJ's finding of inconsistency between the objective medical evidence and Plaintiff's subjective symptom testimony. (PB at 13.)

    Dr. Yamour testified that Plaintiff had episodic heart troubles with long periods when he did well. AR 2084. For instance, after Plaintiff had "a lot of trouble in 2014," he "basically did really well" until 2023. AR 2084. While he had some impairment of his ventricular function, it was only "mild." AR 2085. She found no evidence of "obstructive coronary disease" and opined that his "exercise ability seems to be pretty good." AR 2085. When asked if Plaintiff could stand and walk for eight hours, she testified, "I wouldn't say he couldn't. If he's able to do it, and not physically fatigued, no – there's not a cardiac limitation. His doctors wouldn't restrict him." AR 2089. When asked if Plaintiff's complaints of needing to rest after minimal exertion were medically reasonable, Dr. Yamour responded, "Yes," but then qualified her response by adding, "Well, it's what he's telling you he needs to do." AR 2090. She contrasted "what the [objective] findings are" with Plaintiff's "subjective complaints," explaining that after 2014, his left ventricular function was "stable" at a level that was "[n]ot normal, but not that bad." AR 2090. She concluded, "[F]eelings and perceptions are going to be highly individual. But as far as his anatomy, he's not in bad shape." AR 2091.

    Thus, Dr. Yamour's testimony supports the ALJ's finding that the severity of Plaintiff's alleged symptoms is not supported by the objective medical evidence. See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain,

may have on your ability to work ….").  But because the same objective condition can produce a wide array of subjective symptoms, ALJs cannot rely on this reason alone to discredit symptom testimony.  Coleman v. Saul, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ … may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged.").

      b.    Reason Two: Inconsistency with Other Evidence.

The ALJ wrote that Plaintiff's "statements concerning the alleged intensity, persistence, and limiting effects of [his] symptoms on the ability to ambulate are inconsistent with other evidence and the observations of others."  AR 1514.  The ALJ cited evidence that, in January 2019, Plaintiff was exercising three times a week and jogging about three miles.  AR 1514, citing AR 682.  At that appointment, he reported "[n]o [chest pain] with usual activities and no edema issues."  AR 682.  He denied shortness of breath.  AR 1509, citing AR 550.

In March 2019, Plaintiff went to the emergency room ("ER") a few days after walking several miles.  AR 1509, citing AR 524.  He told the ER that he had walked approximately three miles four days earlier and felt "some discomfort in his left arm which lasted for a fleeting second and then resolved."  AR 524.  He came to the ER after experiencing nausea and sharp chest pain.  AR 524.  At the ER, he had normal heart and breathing sounds.  AR 526.  He was diagnosed with a "non-ST elevated myocardial infarction," a type of heart attack.  AR 529.  Testing, however, showed "[n]ormal left heart filling pressures" (AR 541) which Dr. Yamour testified meant that his heart was "pretty much completely emptying," signifying "the function's good."  AR 2089.

About a month later in April 2019, Plaintiff reported that he "[w]alks a few times per week."  AR 680.  In November 2019, he was "walking less frequently and at lower distances/exertion levels (AR 1401), but by November 2020, he was back to walking up to five times per week (AR 1330).  In March 2021, Plaintiff was able

7

to walk three times per week for exercise. AR 1514, citing AR 1317; see also AR 1302 (walking three to four times per week in July 2021). In April 2022, he walked three times per week close to his home. AR 1276. His doctors recommended increasing his exercise to four or five walks per week. AR 1278.

The ALJ found this evidence inconsistent with Plaintiff's testimony. AR 1514. Substantial evidence supports the ALJ's finding of inconsistency. While Plaintiff told the SSA in May 2022 that he could only walk fifteen or twenty steps while carrying a 12-pack of soda before getting out of breath and needing to rest ten or fifteen minutes to recover (AR 49, 54), he told his doctors in April 2022 that he regularly walked for exercise three times per week (AR 1276). While he told the SSA that he had constant, severe leg and chest pain (AR 42, 53), the ALJ cited medical appointments at which Plaintiff reported no chest pain and exhibited no edema/leg swelling. AR 1509-10.

Plaintiff argues that "[b]eing functional some or even most of the time" does not show that he could sustain full-time, light work. (PB at 13.) But the ALJ is not required to demonstrate that a claimant's activities are commensurate with full-time employment to discount his subjective symptom testimony. The touchstone of the ALJ's analysis is inconsistency between the claimant's testimony and his activities. "Daily activities inconsistent with a claimant's self-described level of pain … are valid reasons for an adverse credibility finding [if] they are supported by substantial evidence." Back v. Colvin, 653 F. App'x 550, 552 (9th Cir. 2016).

    c.   Reason Three: Inconsistency with Effective Treatment.

Since the ALJ gave two clear and convincing reasons supported by substantial evidence, the Court need not discuss the ALJ's third reason.

/ / /

/ / /

/ / /

/ / /

8

## V.
## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

DATED: October 17, 2025

*Karen E. Scott*
KAREN E. SCOTT
United States Magistrate Judge